WHIDDON, admx., *et al. v.* WILLIAMS & CO. *et al.*

1. The general rule that a judgment *de bonis testatoris* against an administrator who failed to plead a want of assets is, at law, conclusive upon him of a sufficiency of assets to pay the debt upon which that judgment was rendered, is well settled; and though this rule may be subject to some relaxation in a case where, upon equitable principles, the administrator should, in justice and in fairness, be relieved from personal or individual liability upon the judgment, such a case does not arise when there has been no sufficient excuse for not filing the proper plea at the right time. A mere failure to know the real condition of the estate, when by the exercise of due diligence the administrator might and ought to have known it, will not suffice for such an excuse.

2. Where an administrator who has subjected himself to personal liability upon a judgment rendered as above indicated files an equitable petition to marshal the assets of his intestate's estate, to which petition the judgment creditor is a party, it is the right of the latter, upon an appropriate answer in the nature of a cross-petition, supported by the necessary proof, to obtain a judgment against such administrator binding his personal estate.

3. Where a purchaser of land under a bond for titles made permanent improvements upon the land, which so greatly enhanced its value that it became unquestionably worth considerably more than the amount of the purchase money debt, and then died, his estate, though no portion of the purchase money had been paid, had an equitable interest in the property which his administrator could not, as against the rights of creditors, lawfully acquire by paying the purchase money and taking to himself personally a deed from the original vendor. While, under such circumstances, the administrator was under no duty of settling the purchase money debt with his own funds for the purpose of having the land conveyed to the estate, it was his duty to pay off this debt with money of the estate, if he had any in hand which could be lawfully applied to this purpose; or, if not, then to invoke the aid of a court of equity in such manner as to secure to the estate the benefit of its interest in the property.

4. While one administrator may not, under some circumstances, be accountable for acts of waste committed by a co-administrator, he is accountable for such acts when he connives at and participates therein, or by his gross negligence enables or permits the co-administrator to do the same.

5. This being a petition by an administratrix and administrator to

marshal the assets of the estate of their intestate, although the guardian of certain minor children of whom the intestate had formerly been guardian was a party defendant and one in whose favor a judgment could be rightly rendered, it was not a proper case (even if complete as to pleadings) for the rendition of a judgment in favor of the present guardian, or of the ordinary to whom the intestate's bond as guardian was payable, against a living surety on that bond, or the executrix of a deceased surety thereon, either individually or as executrix, especially where so doing in effect necessitated a marshaling of the assets of the deceased surety's estate.

6. The several judgments included in the general finding, in the nature of a decree, rendered by the trial judge, to whom the case was submitted without the intervention of a jury, sufficiently disposed of the issues presented by the pleadings and evidence, so far as concerned the parties before the court at the time the case was tried: and, subject to what is contained in the directions given by this court, the case, as a whole, was correctly disposed of, except that no judgment should have been rendered against the surety on the intestate's bond as guardian, or against the executrix of the deceased surety thereon, either in her capacity as executrix or individually, for any liability arising upon that bond, the question of such alleged liability being one which should have been left open and undetermined; and save, further, that the judgment against the plaintiffs in favor of the ordinary should have been in favor of the guardian of the minors whom he represented.

April 13, 1896.  Argued at the last term.

Equitable petition.  Before Judge Smith.  Dodge superior court.  March term, 1895.

*DeLacy & Bishop* and *J. E. Wooten*, for plaintiffs.

*D. M. Roberts, Smith & Clements, Evans & Evans* and *E. Herrman*, for defendants.

LUMPKIN, Justice.

Mrs. Annie E. Whiddon, as administratrix, and T. J. Buchan, as administrator, of the estate of W. B. Whiddon, deceased, filed an equitable petition to marshal the assets of his estate.  The case was tried by the presiding judge, upon all the issues involved, without the intervention of a jury.  Among the creditors who were made parties defendant were J. P. Williams & Co., who had previously ob-

tained a judgment against the plaintiffs in their representative capacity in an action in response to which there had been no plea of a want of assets. The evidence shows that, by the exercise of ordinary and reasonable diligence, the defendants to that action might without serious difficulty have ascertained the real condition of the estate before the judgment was rendered, but that they failed to do so. To the plaintiffs' petition, Williams & Co. filed a plea in the nature of a cross-action, in which they set up all the material facts relating to the rendition of their judgment against the administratrix and administrator, and prayed for, and obtained, a judgment binding their personal estates. Williams & Co. also sought to make the sureties upon the bonds given by Mrs. Whiddon as administratrix, and Buchan as administrator, parties to the case, and to obtain judgments against them, but upon demurrer the court expressly dismissed so much of the cross-petition of Williams & Co. as sought a recovery against these sureties. To this ruling of the court no exception was taken, and therefore the latter are not to be considered, nor treated, as parties to the case.

It appears from the record that the intestate, before his death, had purchased a tract of land, taking bond for titles, and that he died in possession of the premises. While in life, he made permanent improvements upon the property, which very greatly enhanced its value, and in consequence of which it became, beyond doubt, worth considerably more than the amount of the purchase money debt, upon which, however, he had never paid anything. Before the petition to marshal assets had been filed, Mrs. Whiddon, abandoning the estate's equity in the land, and contracting in her own name and right, had paid off this purchase money debt with money belonging to herself, and had taken a deed from the vendor conveying the land, with all the improvements thereon, to herself individually. It would seem that she was aided in this transaction by Buchan, the adminis-

trator.    There was ample evidence to warrant a finding that he participated in the negotiations by which she procured the deed above mentioned; and it also.appears that when this land was afterwards levied on under the execution in favor of Williams & Co., Buchan, as the agent of Mrs. Whiddon, filed a claim alleging that the property belonged to her.

Among others who were parties defendant to the petition was W. J. Henderson, who was the guardian of certain minor children of whom the intestate had formerly been guardian.    The defendant filed an answer in which he set up a large indebtedness by the intestate on account of the former guardianship, and also in his answer alleged that C. B. Murrell and W. P. Eastman, deceased, were sureties upon the bond given by W. B. Whiddon as guardian, and that Mrs. Caro C. E. Ogden was the executrix of Eastman's estate.    This answer proceeded further to allege that Mrs. Ogden had "already been named as a party defendant in this cause, concerning some other matters; but whether she [had] been served or not, this defendant [was] not informed."    In point of fact, Mrs. Ogden, in her representative capacity, was a party to the case, having been made so originally with reference to certain transactions between her testator and the deceased Whiddon, in no way connected, however, with the latter's liability to the minors of whom he had been guardian.    Henderson's answer contained no prayer that Murrell be made a party, nor did it pray for process against Mrs. Ogden for the purpose of requiring her to answer his complaint with respect to the alleged liability of her testator upon the guardian's bond.

There appears in the record a transcript of the declaration, demurrer and pleas in a pending action brought by M. Newman, ordinary of Washington county, for the use of Henderson, guardian, against Whiddon's representatives and Murrell and Mrs. Ogden, as executrix, upon this identical bond.    This transcript was not attached to any of the

pleadings in the present action as an exhibit, and how it got into the record of this case at all is not disclosed, though it seems to have been treated at the trial as a part of the pleadings. At any rate, a judgment was rendered in favor of M. Newman, ordinary, against the administratrix and administrator of Whiddon, and against Murrell and Mrs. Ogden individually; and it was further adjudged "that the sureties on the guardian's bond of W. B. Whiddon are chargeable with the liabilities of said W. B. Whiddon, guardian, as aforesaid."

Before the case came on for a final hearing, the plaintiffs' action was dismissed as to a number of the original defendants thereto; and consequently, the judgment rendered deals only with such matters of controversy as were in issue between those actually parties when it was rendered. The bill of exceptions assigns error upon numerous rulings made by the judge and to various portions of the final judgment. Many of the exceptions are of minor importance, and deal with matters immaterial to a proper determination of the case upon its substantial merits. The nature of those exceptions which are of real consequence will appear from what has been above stated, read in connection with the following brief discussion of the points of law involved.

1, 2. In the case of *Gibson* v. *Robinson*, 90 *Ga.* 756, this court again recognized the doctrine, which had already been established by numerous adjudications, that where an administrator is sued upon an alleged debt of his intestate and fails to plead a want of assets, a judgment rendered against him in such suit is conclusive upon him as to his having, at the time of its rendition, a sufficiency of assets in his hands belonging to the estate with which to pay the debt. The case cited was an action at law upon an administrator's bond, and the rule in question was directly applicable to it and to cases of like character.

In *Gause* v. *Walker*, 55 *Ga.* 129, however, it was held, in effect, that in equity this rule was subject to some relax-

ation in a case where, upon equitable principles, the administrator, although he had failed to plead *plene administravit præter* before judgment against him was rendered, might be entitled to relief from personal or individual liability. Such a case would arise where the administrator showed a reasonable and satisfactory excuse for failing to file this plea at the proper time; but in the absence of such excuse, the rule of law above stated would obtain in all its rigor. The case of *Gause* v. *Walker* was decided upon its own peculiar facts, and is not controlling in the case at bar. The only excuse presented by the representatives of Whiddon's estate for a failure to plead a want of assets in defense to the action brought by Williams & Co. was, in effect, that neither of them knew, when this action was pending, the real condition of the estate. It was the duty of these representatives to know the condition of their intestate's estate, and the evidence, as a whole, was certainly sufficient to authorize the judge in finding that their failure to do so was the result merely of gross negligence and inattention to duty on their part. In other words, the trial judge was fully warranted in reaching the conclusion that if they had made proper inquiries and exercised reasonable diligence, they would have been able to easily possess themselves of the real facts, and to have governed themselves accordingly in presenting their defense to the action brought by Williams & Co.

We are therefore of the opinion that there was no error in rendering a judgment in favor of the latter, binding the personal estates of Mrs. Whiddon and of Buchan. Such a judgment could, unquestionably, have been obtained by Williams & Co. in a proper action against these representatives. True, the sureties on an administrator's bond are usually also made parties to a proceeding of this kind; but no good reason occurs to us why, in the present action, Williams & Co., having been brought into court by the plaintiffs' petition to marshal the assets of their intestate's estate,

could not, by an answer in the nature of a cross-petition, establish their right to a recovery against Mrs. Whiddon and Buchan personally, as effectually as might have been done in an original and independent suit brought against them.     As has been stated in the preliminary summary of facts, the sureties on the bonds of Mrs. Whiddon and Buchan are not parties to the present proceeding; but this surely can make no difference, so far as their principals are concerned, for in no event can it ever be of any legal benefit to a principal to show that his surety is equally bound with him.     Nor was it essential that Williams & Co. should show that the execution in their favor had been issued and a return of *nulla bona* made thereon, because the plaintiffs not only themselves alleged the insolvency of the estate, but had also enjoined Williams & Co. from proceeding with their execution; and one of them, through the other as agent, had filed a claim to land which Williams & Co. sought to subject as the property of the estate.

3, 4. During his lifetime, W. B. Whiddon bargained for certain land, of which he went into possession under a bond for titles, and for which he contracted to pay the sum of $800.     At the time of his death, however, he had paid no part of the purchase money, although he had made permament improvements upon the land, which so greatly enhanced its value that it was undoubtedly worth very much more than the amount of the purchase money debt.     The proof shows, beyond question, that if this land had been exposed to sale, it would have realized enough to discharge this debt and leave a considerable surplus.     We therefore think that Whiddon's estate had, undoubtedly, a clear equitable interest in this land; and it is obvious that if the matter had been properly managed, this interest would have been made available for the benefit of creditors.     No effort to accomplish this result was made by the representatives of Whiddon's estate.     On the contrary, Mrs. Whiddon, in effect, endeavored to rescind the contract of purchase which

had been made by her intestate, and with money belonging to herself paid off the purchase money debt and had the land conveyed to herself individually. As already indicated, the evidence warrants the conclusion that Buchan aided her in bringing about this result. There is testimony to show that he participated in the negotiations leading up to it, as the agent of Mrs. Whiddon; and it is certainly true that, as her agent, he filed a claim alleging that the land in question was her property, when it was levied on under the execution in favor of Williams & Co. If, therefore, the act of Mrs. Whiddon in thus procuring title to this land was a *devastavit*, Buchan is, in law, as much chargeable therewith as she is. Under the facts disclosed, what were the duties of these representatives with reference to the equitable interest of their intestate's estate in this land? They were certainly trustees for the creditors, and, as such, bound to exercise good faith in making the estate realize as much as possible from all its assets, both legal and equitable, in order to settle, as far as practicable, all just and legitimate demands in favor of such creditors. Of course, it would not do to hold that an administrator, under such circumstances, was bound to take money of his own and pay off the purchase money debt, for the purpose of obtaining title in the estate and then administering the land as a part of its assets. Nor do we mean to say that an administrator could appropriate money of the estate in his hands which was subject to the payment of debts of higher dignity, for the purpose just indicated. But certainly, where it was perfectly apparent that a settlement of the purchase money debt would result in bringing into the estate property worth much more than the amount of that debt, a court of equity, upon a proper application by the administrator, would unquestionably grant appropriate relief. For instance, it could order the property sold, and direct that out of the proceeds the purchase money debt be first paid, which would give to the vendor his full rights

in the premises; and then the surplus would go into the hands of the representative of the estate for administration. An extreme case, as an illustration, is sometimes of service to prove the truth of a rule announced.   Suppose Whiddon had purchased a city lot for five thousand dollars, this being its fair market value, and, with cash in hand, had erected thereon a magnificent building costing one hundred thousand dollars, and had subsequently died without paying a cent of the purchase money of the lot.   Who would seriously contend that his widow and administratrix could, by paying off the five thousand dollars, obtain for herself, as against the rights of creditors of her deceased husband, this improved property, worth more than one hundred thousand dollars?   The principle which would control a case like the one suggested is equally applicable to the facts of the present case.

5. The character of the petition in the present case has already been stated.   Undoubtedly, Henderson, as guardian of the minors, was a proper party, and one in whose favor, as such guardian, a judgment could be rightly rendered. But the rendition of a judgment, even upon complete pleadings, in favor of Newman, ordinary, for the use of Henderson, against Murrell, one of the sureties on the bond given by Whiddon as guardian, or against Mrs. Ogden, who was the executrix of Eastman, deceased, who had been a surety upon that bond, would hardly have been allowable.   On the pleadings as they stand in the record now before us, certainly no such judgment was warranted.   We do not, however, rest our decision on this point upon this latter view.   Assuming that Newman's action upon the guardian's bond (the appearance of which in the record has already been referred to) could properly be treated as an answer or intervention in his name, we still think the judgment against Murrell and Mrs. Ogden was unauthorized.   An examination of the record will show that the rendition of such a judgment practically necessitated a marshaling of

the assets of Eastman's estate. There is generally enough trouble and confusion in marshaling the assets of one complicated estate, without drawing into the proceedings for this purpose pleadings and evidence appropriate and necessary in marshaling the assets of still another independent estate. The action of Newman was in no way germane to the objects sought to be accomplished by the plaintiffs' petition. It was legitimate and proper to ascertain and fix the liability of Whiddon's estate to these minor children by a judgment in favor of Henderson as guardian, but this was going far enough, and the controversy arising upon Whiddon's bond between the ordinary and the sureties thereon should have been disposed of in another and distinct proceeding. Henderson—or perhaps Newman—could, in the present action, have prayed for and obtained any proper relief against the representatives of Whiddon, but neither Henderson nor Newman could use this proceeding as a vehicle for obtaining redress against others in whose affairs Whiddon's estate had no interest, and as to whose liability it was in no way concerned.

The court was right in adjudicating that Whiddon's estate was liable to the minors represented by Henderson as guardian, but the judgment against the administratrix and administrator of Whiddon should have been in favor of Henderson, and not in favor of Newman, ordinary. The error thus indicated has been corrected by appropriate direction.

6. The judge by whom this case was tried made a general finding in the nature of a decree, which embraced several distinct judgments upon the issues presented by the pleadings and evidence. One of the errors assigned in the bill of exceptions is that the judgment, as a whole, does not fully and finally dispose of the entire case. As already seen, several of the original defendants were no longer parties at the time the case was tried; and so far as concerns the parties who were properly before the court when the

case was finally disposed of, we fail to perceive any merit in the exception complaining that the judgment then rendered was not sufficiently full and explicit.

We have carefully examined and considered the evidence, and, in our opinion, it warrants the several findings of the court upon questions of fact, including the amounts of the *devastavits* committed by the plaintiffs as the representatives of Whiddon's estate, and the amount found to be due the minors represented by Henderson, guardian.

The judgment against Murrell and Mrs. Ogden, in view of what has been above stated, cannot, of course, stand. In other respects, the judgment of the court below is affirmed, subject to the following directions: First, that the judgment rendered in favor of M. Newman, ordinary, be so amended that the same shall be in favor of W. J. Henderson, as guardian of the minor children named in his answer; and, secondly, that this judgment, save only as to the extent of the *devastavits* found by the trial judge, is not to be construed as conclusive upon the question as to the sufficiency of assets in the hands of the plaintiffs, as administratrix and administrator, with which to pay the same.

*Judgment affirmed in part, and in part reversed, with directions.*